DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas that found appellant guilty of one count of sexual battery and determined him to be a sexually oriented offender. For the reasons that follow, the judgment of the trial court is affirmed. *Page 2 
 {¶ 2} Appellant sets forth the following assignments of error:
 {¶ 3} "I. The verdict was against the manifest weight of the evidence.
 {¶ 4} "II. It constituted error to respond to a question from the jury during deliberations by providing dictionary definitions of the word `substantially.'
 {¶ 5} "III. It constituted error to find that appellant is a sexually oriented offender."
 {¶ 6} On February 17, 2005, appellant was indicted on one count of sexual battery in violation of R.C. 2907.03(A)(2) or (3). The victim alleged that appellant engaged in sexual conduct with her at a party at a friend's house while she was impaired by alcohol and unable to resist. After trial to a jury, appellant was found guilty and was sentenced to one year imprisonment. Appellant's sentence was stayed pending appeal.
 {¶ 7} In his first assignment of error, appellant asserts that the evidence did not support a finding that he knew the victim's ability to control her own conduct was substantially impaired or that he knew she was not a willing and knowing participant in the sexual activity.
 {¶ 8} In determining whether a verdict is against the manifest weight of the evidence, the appellate court "weighs the evidence and all reasonable inferences, and considers the credibility of witnesses."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. The court then makes a determination as to whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. *Page 3 
Under this manifest weight standard, the appellate court sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. Id.
 {¶ 9} The jury in this case heard testimony from nine witnesses, including appellant and the victim. Witness Anne Bunda testified that she arranged a party for her friend Chris McGreevy at his home on the night of June 13, 2004. The party was attended by about 30 people, including appellant and the victim, both of whom were friends of McGreevy. Later in the evening, Bunda went upstairs to sleep, opened the door to McGreevy's bedroom and heard someone tell her to "get out." Bunda shut the door and went downstairs. A few minutes later, she went back upstairs and opened the door again. The light was off but a hallway light shone into the room. Bunda saw the victim lying on the bed with appellant "over top of her." She testified that she saw the victim lying on her side facing away from the door. She noticed that the victim's pants were down by her knees. She wasn't moving and half of her face was covered by a pillow. Appellant was on his knees next to the victim, "up against her behind." After a few seconds, Bunda closed the door, went downstairs and told McGreevy that the victim was upstairs with someone and was not moving. McGreevy ran upstairs to his room and opened the door forcefully. Appellant immediately jumped off the bed and McGreevy told him to leave. Bunda testified that the victim "slowly woke up" and looked around. She stated that the victim seemed confused. Bunda did not see the victim again until she returned later that night from the hospital. *Page 4 
 {¶ 10} McGreevy testified that he was outside talking to friends when Bunda came to him and told him he should go upstairs because the victim had passed out. McGreevy ran up the stairs, threw the door open and turned the light on. He saw appellant get off the bed and noticed the victim lying on her side with her pants partially off. He did not see any sexual activity occurring when he opened the door. He began to yell at appellant, asking what happened. McGreevy testified he did not think the victim moved when he entered the room and said he found her lack of any reaction to the commotion unusual. He further stated that during the course of the party the victim appeared intoxicated, particularly later at night when she seemed more so than anyone else there.
 {¶ 11} The victim testified that she knew appellant, whom she described as an acquaintance, from their military service. She stated she drank one beer early in the evening and talked to appellant after he arrived at the party. She then played two "drinking games" that involved consuming beer. The victim had another beer from a keg and then decided to go with a friend to the liquor store. When she returned to the party, she had two mixed drinks. She stated that while she was watching some people play the drinking game, she told a friend that she was tired and was going upstairs to lie down. She went to McGreevy's bedroom and lay down on the bed. The next thing she recalled was saying, "I don't want to talk to anyone," and turning to face the wall. She did not know to whom she made the comment. The next thing she recalled was rolling over and seeing some people in the room. She was surprised and confused. She does not recall having sexual intercourse with appellant that night. After that, she recalled being taken *Page 5 
downstairs and sitting outside a neighbor's house talking to some of her friends. She said her friends told her what happened and asked her if she wanted to go to the hospital. When she said yes, a friend took her to the hospital, where she was examined by a sexual assault nurse examiner, who collected evidence for a sexual assault kit.
 {¶ 12} The trial court also heard testimony from the forensic scientist who examined the physical evidence submitted to the Bureau of Criminal Identification and Investigation in this case. She testified that the vaginal swabs taken from the victim tested positive for semen. She did not perform the test to determine whether the semen contained DNA from appellant.
 {¶ 13} Appellant testified that he met the victim when they both served in the Army National Guard; they also served in the same unit in Kuwait. Appellant denied having a personal relationship with her prior to June 13, 2004. While at McGreevy's party, appellant consumed beer. He recalled talking to the victim early in the evening when he asked her where her beer was. She told him she was not drinking much because she was on medication. Appellant stated that the victim did not appear highly intoxicated. Later in the evening, when he went upstairs to use the bathroom, he saw the victim in one of the bedrooms and started talking to her. He testified that they talked for a while and that he eventually shut the door. He asked her if he could lie down with her and she responded that she did not care. They kissed and eventually removed their clothes. Appellant recalled that after a few minutes, he heard the door open and shut quickly. He further testified that he asked the victim if she thought they should be in *Page 6 
McGreevy's bedroom and that she said it was all right. Appellant heard the door open again for a second or two and they continued having intercourse. He then recalled the door opening a third time and someone telling him he had to leave. He got up, got dressed and left the party. He testified that the victim was awake the entire time he was with her and that at no time did she indicate she wanted to stop their sexual activity.
 {¶ 14} Appellant claims that the sexual activity was consensual and that the evidence does not support a finding that he knew the victim was impaired and not a willing participant in the activity.
 {¶ 15} Appellant was found guilty of violating R.C. 2907.03(A)(2) or (3), which states:
 {¶ 16} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 {¶ 17} "* * *
 {¶ 18} "(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.
 {¶ 19} "(3) The offender knows that the other person submits because the other person is unaware that the act is being committed."
 {¶ 20} The trial court in this case weighed the state's evidence as summarized above and assessed the witnesses' credibility in determining whether appellant committed the offense. After reviewing all the evidence in this case, we cannot say that the trier of *Page 7 
fact lost its way and created a manifest miscarriage of justice by finding appellant guilty of sexual battery. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 21} In his second assignment of error, appellant asserts that the trial court erred in its response to a question from the jury during its deliberations. During deliberations, the jury sent out the following question: "What is the legal definition of substantially impaired?" The trial court then discussed possible definitions with counsel. Both counsel agreed that there is no definition of "substantial impairment" in the Ohio Revised Code. After a lengthy discussion, defense counsel objected to giving a definition, arguing that the words about which the jury inquired are commonly understood terms which should be given their ordinary and everyday meaning. The record reflects that the trial court indicated to counsel it would tell the jury that there is no legal or statutory definition of "substantially impaired" and instruct the jurors to use the common, everyday meaning of the phrase. The trial court further indicated it would tell the jury it was providing, for their assistance, definitions of both words taken from the American Heritage Dictionary of the English Language. The definition of "substantially" which the trial court indicated it was going to provide was "to a considerable extent or degree," followed by definitions of "considerable" and "impaired." We note that the trial court's answer as it was given to the jury is not included in the transcript before us.
 {¶ 22} When a jury requests further instruction, the trial court may use its own discretion in responding. State v. Carter (1995),72 Ohio St.3d 545, 553; State v. Robinson (June 13, 1986), 6th Dist. No. L-85-278. Reversal of a conviction based on a *Page 8 
trial court's response to such a request requires a showing that the trial court abused its discretion. Carter, supra, at 553. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unreasonable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 23} Appellant does not argue that the definitions given were incorrect or improper; rather, he argues that the trial court should not have responded to the question by providing any definitions. He asserts that by providing the definitions, the trial court unduly and unfairly emphasized one of the elements of the crime charged. However, the fact that the jurors asked the question indicates that the term "substantially impaired" was in fact an issue for them, regardless of whether or not the court provided a definition. We cannot find that the trial court emphasized the term "substantially impaired" by responding to the jury's request for assistance and clarification. Based on the foregoing, the trial court's decision to provide the definitions was not unreasonable, arbitrary or unconscionable and therefore not an abuse of discretion. Appellant's second assignment of error is not well-taken.
 {¶ 24} In his third assignment of error, appellant simply states that that if his conviction is reversed, his classification as a sexually oriented offender must also be reversed. Appellant does not argue that the trial court erred by classifying him as a sexually oriented offender. In light of our decision to affirm appellant's conviction, his sexual offender classification pursuant to R.C. 2950.09 is also affirmed. Appellant's third assignment of error is therefore moot and not well-taken. *Page 9 
 {¶ 25} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the cost of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 1